IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
JANUARY 23, 2001 Session

## JACK DENNIS BIGGS v. FARM CREDIT SERVICES OF MID-AMERICA

**Direct Appeal from the Chancery Court for McNairy County**
**No. 7405     Dewey C. Whitenton, Chancellor**

_____

**No. W2000-00545-COA-R3-CV**

_____

In this boundary line dispute, the trial court was presented with conflicting testimony from two surveyors as to the proper boundary lines of a two and one-half acre tract. After reviewing the evidence presented, the trial court determined that Mr. Biggs' surveyor's plat controlled. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; and Remanded**

DAVID R. FARMER, J., delivered the opinion of the court, in which ALAN E. HIGHERS and HOLLY K. LILLARD, J.J., joined.

J. Michael Ivey, Parsons, Tennessee, for the appellant, Farm Credit Services of Mid-America.

B. David Sweeney, Memphis, Tennessee, for the appellee, Jack Dennis Biggs.

**OPINION**

Farm Credit Services of Mid-America (Farm Credit) loaned funds to Jack Biggs (Mr. Biggs) and his wife, Pamela Nelson Biggs (Mrs. Biggs),[1] for the purchase of a home. The loan was secured by a deed of trust on a two and one-half acre tract of land in McNairy County. Mr. Biggs defaulted on the loan, and Farm Credit foreclosed on the property. At the foreclosure sale, Farm Credit purchased the property for $47,500. Thereafter, Mr. Biggs asserted that the legal description of the property contained in the deed was incorrect. The legal description provides as follows:

BEGINNING at a stake on the Old Ramer Road which is the South corner of James Sims' property; thence in an Eastern direction 210 feet with Sims and Johnson boundary to a stake; thence in a Southern direction, with Johnson boundary, 525 feet to a stake; thence in a Western direction, with Johnson boundary 210 feet to a stake

---

[1] In June of 1993, Mrs. Biggs transferred any interest she owned in the property at issue to Mr. Biggs by a quitclaim deed.

on Old Ramer Road; thence in a Northern direction 525 feet with Old Ramer Road to the point of beginning, containing 2-1/2 acres, more or less.

Thereafter, Farm Credit was granted a detainer warrant in general sessions court for possession of the property. Mr. Biggs subsequently filed suit to quiet title in the McNairy County Chancery Court.

At trial, it was uncontested that the legal description of the property in the deed was incorrect. Mr. Biggs' surveyor, William R. Ashe (Mr. Ashe), testified that the description of the property in the deed placed the property in a location that the grantors did not own. To correct the deed, Mr. Ashe began at the starting point in the deed and then reversed all of the directions in the deed. Farm Credit's surveyor, James Martin (Mr. Martin), testified that the deed would place the property in a location further down the road than where it was actually located. To correct the deed, Mr. Martin began at a steel post on the Bryant boundary line, and then reversed the directions on the deed. Further, Mr. Martin stated that, in his opinion, the tax map indicates that the property in dispute is in the same location as where he has the property platted.

After reviewing the evidence, the trial court determined that Mr. Biggs intended that the house and the two and one-half acre tract would be included as part of the collateral granted to Farm Credit to secure his loan. The court further determined that the legal description in the deed was erroneous and that the only reasonable explanation to the calls of the beginning point was the corner of the James Sims' property. Thus, the court ruled that Mr. Ashe's plat controlled. However, the court noted that, according to Mr. Ashe's plat, the house was not entirely situated on the property. Accordingly, the court ordered that any property lines pursuant to Mr. Ashe's plat would not sever through the house, but would actually go around the corner of the house.

Farm Credit brings this appeal, raising the following issues, as we perceive them, for this Court's review:

1.      Whether the trial court erred in applying the law as to the rule of construction in boundary line disputes.

2.      Whether a preponderance of the evidence supports the trial court's ruling.

Since this matter was tried before the court sitting without a jury, our review of the trial court's findings of fact is *de novo* with a presumption of correctness, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d). As the issues regard questions of law, our review is *de novo* with no presumption of correctness. *See Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997); Tenn. R. App. P. 13(d).

In determining boundary line disputes, the general rule is that preference is given first to natural objects or landmarks on the property, then to artificial objects or landmarks on the property, then to the boundary lines of adjacent property, and finally to the courses and distances contained in documents relevant to the disputed property. *See Pritchard v. Rebori*, 186 S.W. 121, 122 (Tenn.

1916); ***Thornburg v. Chase***, 606 S.W.2d 672, 675 (Tenn. Ct. App. 1980). However, this general rule is not absolute and inflexible. ***See Pritchard***, 186 S.W. at 122. Rather, the objective in boundary line disputes is to ascertain what particular land was intended to be included in a conveyance. ***See id.*** at 123.

Both Mr. Ashe and Mr. Martin found a steel fence post on the northern boundary of the original six and one-half acre tract, which is consistent with the well-established southern boundary of the Steve Bryant property. Mr. Ashe testified that he worked off of this northern boundary to get to his starting point, the southern most boundary of the original six and one-half acre tract. From this southern boundary, Mr. Ashe established the boundary lines by measuring the distances required by the deed. Mr. Ashe's plat is a mirror image of the property conveyed in the deed. Pursuant to Mr. Ashe's plat, the Biggs' house is located at the northwestern corner of the property, with a portion extending over onto the property Mr. Biggs owns with his siblings.

Mr. Martin established the boundaries of the property on his plat by using as his beginning point the same steel fence post used by Mr. Ashe. From there, Mr. Martin measured the property southerly to an angle iron. He then worked his way back to his point of beginning for a total of approximately 2.289 acres. According to Mr. Martin's plat, the Biggs' house is approximately in the center of the lot.

Mr. Biggs testified that a Farm Credit representative visited the property before lending him the funds for the purchase of the house; however, Mr. Biggs did not show Farm Credit the boundaries of the property. Mr. Biggs testified that he intended the loan to be for the property located in the area designated on Mr. Ashe's plat.[2] Further, Mr. Biggs testified that he never intended to give Farm Credit an interest in the land north of the designated area on Mr. Ashe's plat - the area that would comprise the northernmost section of the area in Mr. Martin's plat - as this land was owned jointly by Mr. Biggs and his siblings.

In ***Norman v. Hoyt***, 667 S.W.2d 88, 91 (Tenn. Ct. App. 1983), the court stated

> When a court is called upon to establish a boundary, the court must depend upon the evidence adduced by the parties, and, if possible to do so, the boundary must be established by the preponderance of the evidence, including the credibility of witnesses as determined by the trier of fact.
> [citation omitted].

Further,

---

[2]Additionally, Mr. Biggs testified that after his mother and step-father built the house at issue here, they were afraid that the house was too close to the boundaries. Therefore, they bought additional acreage from Mr. Biggs' grandmother. This testimony supports the description of the property found in Mr. Ashe's survey.

[w]here the issue for decision depends on the determination of the credibility of witnesses, the trial court is the best judge of the credibility and its findings of credibility are entitled to great weight. This is true because the trial court alone has the opportunity to observe the appearance and the demeanor of the witnesses.

*Tenn-Tex Properties v. Brownell-Electro, Inc.*, 778 S.W.2d 423, 426 (Tenn. 1989) (citing *Royal Ins. Co. v. Alliance Ins. Co.*, 690 S.W.2d 541, 543 (Tenn. Ct. App. 1985)).

Based on our review of the record in the instant case, we are of the opinion that the evidence does not preponderate against the trial court's conclusion that Mr. Ashe's survey is preferable to Mr. Martin's survey. Additionally, we find that the trial court did not err in applying the rule of construction in boundary dispute cases as such rule is not inflexible and absolute. Accordingly, we affirm the ruling of the trial court. The costs of this appeal are taxed to the appellant, Farm Credit Services of Mid-America, and its surety, for which execution may issue if necessary.

_____
DAVID R. FARMER, JUDGE