# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
July 13, 2001 Session

## SHIRLEY A. SHELBURNE, INDIVIDUALLY AND AS NEXT FRIEND OF TRAVIS LEE SHELBURNE v. FRONTIER HEALTH, ET AL.

**Appeal from the Circuit Court for Carter County**
**No. C7500     Thomas J. Seeley, Jr., Judge**

### FILED OCTOBER 29, 2001

### No. E2000-02551-COA-R3-CV

This is a negligence action that finds its genesis in the suicide of a county jail inmate. Prior to his death, the decedent had been evaluated by Richard Kirk, a member of a crisis response team operated by the defendant Woodridge Hospital, a facility owned and operated by the defendant Frontier Health.[1] Kirk concluded the decedent did not suffer from any psychiatric illness and did not require further care or treatment. The widow of the decedent, Shirley A. Shelburne, individually and as the next friend of her son, Travis Lee Shelburne, sued Frontier Health on the basis of vicarious liability.[2] In response to the defendant's third motion for summary judgment, the trial court dismissed the plaintiff's action. The plaintiff filed a motion to alter or amend the grant of summary judgment, which was denied. The plaintiff appeals, arguing (1) that this case should be remanded for the trial court to reconsider the evidence submitted in support of the plaintiff's motion to alter or amend in light of the Supreme Court's decision in *Harris v. Chern,* 33 S.W.3d 741 (Tenn. 2000); (2) that Frontier Health is not entitled to summary judgment, which was granted on the basis of Kirk's alleged statutory immunity; and (3) that Frontier Health's third motion for summary judgment constitutes an improper "appeal" of the denial of its second summary judgment motion by a different trial judge. We affirm.

#### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed; Case Remanded

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which HOUSTON M. GODDARD, P.J., and D. MICHAEL SWINEY, J., joined.

---

[1]For ease of reference, we shall refer to both Woodridge Hospital and Frontier Health collectively as either "Frontier Health" or "the defendant." It is undisputed that Frontier Health owns the hospital.

[2]Ms. Shelburne also brought suit against Carter County. That action is still pending in the trial court and is not a subject of this appeal. This matter is before us pursuant to the provisions of Tenn. R. Civ. P. 54.02.

Robert Lewis King, Johnson City, Tennessee, for the appellant, Shirley A. Shelburne, individually and as next friend of Travis Lee Shelburne.

Thomas C. McKee, Johnson City, Tennessee, for the appellees, Frontier Health and Woodridge Hospital.

**OPINION**

I.

On November 12, 1997, Richard Shelburne attempted, without success, to commit suicide by hanging himself with shoelaces in his cell at the Carter County Jail. Thereafter, at the request of jail personnel, Richard Kirk conducted an interview and evaluation of Mr. Shelburne. Mr. Shelburne told Kirk that he had momentarily lost his will to live following an argument with his wife the night before. He stated he regretted the suicide attempt and denied having any current suicidal ideation, plan, or intent. In a written report, Kirk noted that Mr. Shelburne appeared alert and coherent, that he was cooperative during the interview, and that he exhibited a stable mood and affect. Kirk diagnosed the decedent as "ha[ving] been subjected to a situational distress that was promptly relieved after reassurance and support provided by his wife and Carter County jail staff." Kirk concluded that "[t]here was no evidence of any psychiatric illness that needed any further care or treatment." One week later, Mr. Shelburne killed himself with a pistol that he had taken off the person of a Carter County Sheriff's deputy.

Thereafter, the plaintiff brought the instant action against Frontier Health and Carter County, alleging that the defendants negligently failed to prevent her husband's suicide. Frontier Health filed three motions for summary judgment, the first two of which were denied. In its third motion, Frontier Health asserted that Kirk was entitled to statutory immunity, and that because the plaintiff is barred at law from suing Kirk, she is likewise barred from maintaining a suit based on *respondeat superior* against Frontier Health.

The trial court granted Frontier Health's motion and, finding no just reason for delay, directed the entry of a final judgment pursuant to Tenn. R. Civ. P. 54.02. Subsequently, the plaintiff filed a motion to alter or amend the judgment pursuant to Tenn. R. Civ. P. 59.04. That motion was denied, and this appeal followed.

II.

The plaintiff first argues that the trial court erred in denying her motion to alter or amend. She asserts that the trial court failed to apply the appropriate standard in its review and that it erred in failing to create a record for appellate review as required by the Supreme Court's decision in **Harris v. Chern,** 33 S.W.3d 741 (Tenn. 2000).

In *Harris,* the Supreme Court held that a trial court should consider the following factors when a litigant submits additional evidence in support of a motion seeking to reverse a grant of partial summary judgment pursuant to Tenn. R. Civ. P. 54.02:

> 1) the movant's efforts to obtain evidence to respond to the motion for summary judgment; 2) the importance of the newly submitted evidence to the movant's case; 3) the explanation offered by the movant for its failure to offer the newly submitted evidence in its initial response to the motion for summary judgment; 4) the likelihood that the nonmoving party will suffer unfair prejudice; and 5) any other relevant factor.

*Harris,* 33 S.W.3d at 742. While noting that the question of the standard applicable to a ruling on a motion to alter or amend filed pursuant to Tenn. R. Civ. P. 59.04 was not directly at issue, the *Harris* Court stated that "many of the same considerations discussed herein would be applicable when a litigant submits additional evidence as part of a Rule 59.04 motion to alter or amend a summary judgment." *Id.* at 746 n.4. We have expressly adopted the *Harris* analysis in cases involving Rule 59.04 motions. *See King v. City of Gatlinburg,* C/A No. E2000-00734-COA-R3-CV, 2001 WL 483419, at *3 (Tenn. Ct. App. E.S., filed May 8, 2001); *Smith v. Haley,* C/A No. E2000-01203-COA-R3-CV, 2001 WL 208515, at *6 (Tenn. Ct. App. E.S., filed March 2, 2001).

The rubric of *Harris* does not come into play in a case, such as the instant one, where the trial court has in fact *considered* the newly submitted evidence. *Harris* addresses the factors a trial court should weigh in determining *whether or not to consider newly submitted evidence.* In the instant case, the trial court's order reflects that it considered the evidence submitted by the plaintiff in support of her Rule 59.04 motion and, upon reviewing the evidence, denied the motion. Hence, we find no basis in *Harris* for disturbing the trial court's grant of summary judgment to the defendant.

III.

The plaintiff next argues that Frontier Health is not entitled to a summary judgment predicated on the basis of Kirk's statutory immunity. As a threshold matter, she contends that Kirk is not entitled to immunity because his assessment of Mr. Shelburne was not, according to her, the type of evaluation for which immunity is provided. Even if Kirk is immune, she argues, Frontier Health may nevertheless be held vicariously liable for his actions.

A.

Our standard of review on a grant of summary judgment is well-settled. "Our inquiry involves purely a question of law; therefore, we review the record without a presumption of correctness to determine whether the absence of genuine issues of material facts entitle the defendant to judgment as a matter of law." *Robinson v. Omer,* 952 S.W.2d 423, 426 (Tenn. 1997). The moving party – in this case, the defendant – has the initial burden of producing competent, material

evidence showing that there is no genuine issue as to any material fact. ***Byrd v. Hall,*** 847 S.W.2d 208, 211 (Tenn. 1993). This burden may be met by either affirmatively negating an essential element of the nonmoving party's claim or by conclusively establishing an affirmative defense. ***Id.*** at 215 n.5.

If the moving party successfully negates an essential element of a claim, the nonmoving party must then establish that there are disputed material facts creating genuine issues that must be resolved by the trier of fact. ***Id.*** at 215. The nonmoving party cannot rely upon his or her pleadings to overcome a properly-supported motion for summary judgment. ***Id.***; ***Robinson,*** 952 S.W.2d at 426; Tenn. R. Civ. P. 56.06. The nonmoving party may contradict the factual predicate of the motion by

> (1) pointing to evidence overlooked or ignored by the moving party that establishes a material factual dispute, (2) by rehabilitating the evidence attacked in the moving party's papers, (3) by producing additional evidence showing the existence of a genuine issue for trial, or (4) submitting an affidavit explaining why further discovery is necessary as provided for in Tenn. R. Civ. P., Rule 56.06.

***Robinson,*** 952 S.W.2d at 426 n.4. In addition, the evidence must be viewed by the court in the light most favorable to the nonmoving party, and all inferences must be drawn in favor of the nonmoving party. ***Byrd,*** 847 S.W.2d at 210-11. Summary judgment should be granted only when the facts and conclusions permit a reasonable person to reach only one ultimate conclusion – that the moving party is entitled to a judgment as a matter of law. ***Robinson,*** 952 S.W.2d at 426.

When reviewing a grant of summary judgment, an appellate court must decide anew if judgment in a summary fashion is appropriate. ***Cowden v. Sovran Bank/Central South,*** 816 S.W.2d 741, 744 (Tenn. 1991).

B.

The pertinent provisions of the statutes at issue in this case are as follows:

*T.C.A. § 9-8-307 (Supp. 2000)*

(a)(1) The commission or each commissioner sitting individually has exclusive jurisdiction to determine all monetary claims against the state based on the acts or omissions of "state employees," as defined in § 8-42-101(3), falling within one (1) or more of the following categories:

\*       \*       \*

-4-

(D) Legal or medical malpractice by a state employee; provided, that the state employee has a professional/client relationship with the claimant...

\* \* \*

(h) State officers and employees are absolutely immune from liability for acts or omissions within the scope of the officer's or employee's office or employment, except for willful, malicious, or criminal acts or omissions or for acts or omissions done for personal gain. For purposes of this chapter, "state officer" or "employee" has the meaning set forth in § 8-42-101(3).

*T.C.A. § 8-42-101(3)(D) (Supp. 2000)*[3]

"State employee" also includes persons who are both members of community-based screening agencies that function under title 33, chapter 2, part 6 and who screen individuals to make judgments required by title 33, chapter 2, part 6....The commissioner shall register only the names of properly qualified and designated persons with the board of claims. Persons designated under this item are not eligible for workers' compensation benefits from the state of Tennessee.

*T.C.A. § 33-2-601 (Supp. 2000)*[4]

The [D]epartment [of Mental Health and Mental Retardation] shall develop a system for assuring the most appropriate and effective care for individuals admitted to and discharged from state-supported mental health institutes. This system shall include a community-based screening process. The system shall be designed to minimize length of confinement, promote speedy return to the community, and maximize the individual's ability to remain in a community setting.

C.

Frontier Health argues that it is entitled to summary judgment because, so the argument goes, Kirk is absolutely immune from liability by virtue of his status as a member of a community-based

---

[3] This statute has since been amended effective June 12, 2001. *See* 2001 Tenn. Pub. Acts ch. 377.

[4] The provisions of Title 33 applicable to this case were effective until March 1, 2001. *See* 2000 Tenn. Pub. Acts ch. 947.

screening agency that screens individuals to make commitment decisions pursuant to T.C.A. § 33-2-601 *et seq.* Kirk's status, the defendant contends, qualifies him as a "state employee," as that term is defined in T.C.A. § 8-42-101(3)(D), and renders him absolutely immune for acts or omissions within the scope of his employment. *See* T.C.A. § 9-8-307(h). Because the plaintiff cannot sue Kirk, the defendant argues, she is also barred from suing Frontier Health under a theory of *respondeat superior*.

In order for Kirk to qualify as a "state employee" and thus have absolute immunity for acts or omissions committed within the scope of his employment, two requirements must be satisfied: (1) Kirk must be a member of a community-based screening agency that functions under T.C.A. § 33-2-601 *et seq.* and (2) he must screen individuals to make "judgments required by title 33, chapter 2, part 6." *See* T.C.A. § 8-42-101(3)(D). To determine what type of "judgments" are "required" by this part, we look to T.C.A. § 33-2-601, which is a general provision directing the Department of Mental Health to develop a comprehensive system to ensure "the most appropriate and effective care for individuals admitted to and discharged from state-supported mental health institutes," with an emphasis on minimizing confinement and maximizing a person's ability to remain in the community. To accomplish these goals, the statute requires the system to include a "community-based screening process." Upon reviewing this statute, we find that the "judgments" required under this part involve determinations regarding an individual's need for admission to a state-supported mental health facility. Thus, a "state employee" under T.C.A. § 8-42-101(3)(D) is one who screens individuals to determine their suitability for admission to state-supported mental health institutes.

In support of its summary judgment motion, Frontier Health submitted affidavits establishing the following facts. Kirk is employed by Frontier Health at the Woodridge Hospital facility in Johnson City, Tennessee, as the director of the Crisis Response Team. The Crisis Response Team was established in 1995 to provide community-based screening for commitments to and hospitalizations in state-supported mental health facilities. Kirk is licensed by the State of Tennessee as a licensed clinical social worker, the duties of which include the evaluation of persons thought to be possibly suicidal. Kirk is also certified by the Department of Mental Health to perform evaluations to determine a person's need for commitment for psychiatric hospitalization. As a non-physician, Kirk completed a training program provided by the Department of Mental Health in order to receive this certification. At all times relevant to this litigation, Kirk was registered with the Tennessee Board of Claims as a member of a mental health community-based screening agency who is designated to make judgments under title 33, chapter 2, part 6 and who may complete the certificates of need required for the commitment of individuals to state-supported mental health facilities.

Kirk asserted by way of affidavit that in evaluating the decedent, he was performing his customary duties with the Crisis Response Team, that is, to determine whether commitment to a psychiatric facility was necessary. He determined in the course of his evaluation that Mr. Shelburne did not meet the criteria for commitment set forth in T.C.A. § 33-6-103(a)-(e) (Supp. 2000). Kirk stated that had he determined that Mr. Shelburne was in need of hospitalization, he had the option

of committing him to Woodridge Hospital in Johnson City, Lakeshore Mental Health Institute in Knoxville, or Central State Psychiatric Hospital in Nashville.

The evidence presented by the defendant establishes that Kirk is a member of a community-based screening agency and that he conducted an evaluation of Mr. Shelburne in order to make a determination regarding Mr. Shelburne's need for commitment pursuant to title 33, chapter 2, part 6. These facts, if left uncontradicted, establish that Kirk is a "state employee" for the purposes of T.C.A. § 9-8-307(h) and that he is absolutely immune for his evaluation of Mr. Shelburne.

The plaintiff argues that Kirk is not entitled to immunity as a state employee because his assessment of Mr. Shelburne was not the type of evaluation for which immunity is provided. She argues that immunity is available only in those instances where an evaluation results in the admission or discharge of a patient to a state-supported mental health institute, and that because Mr. Shelburne was neither admitted to nor discharged from a state-supported mental health institute, Kirk is not afforded immunity for his conduct. The plaintiff further contends that T.C.A. § 33-2-601 is "designed for and aimed at situations in which a free person, at large in the community – not already confined as the late Mr. Shelburne – was in need of being taken into custody, screened for mental health problems and possible commitment."

We find nothing in the language of T.C.A. § 8-42-101(3)(D) or § 33-2-601 to support the plaintiff's assertion that a member of a community-based screening agency is considered a "state employee" only if his or her evaluation of an individual results in the admission of that individual to a mental health institute. T.C.A. § 8-42-101(3)(D) defines a "state employee" as one who *screens* individuals to make decisions regarding hospitalization; T.C.A. § 33-2-601 requires the implementation of a *screening* process to ensure the most appropriate and effective treatment of individuals. The plain and ordinary meaning of the term "screen" is "[t]o separate" or "[t]o examine carefully in order to determine suitability." *Webster's II New Riverside University Dictionary* 1049 (1994). It is logical to assume that some of the individuals evaluated by community-based screening agencies will be "screened out" by the evaluations, that is, they will be deemed unsuitable for hospitalization; that is the very purpose of establishing a screening process. We see nothing in these provisions to justify holding that members of such screening agencies have immunity from suit only when their decisions result in commitments.

We further find no merit in the plaintiff's contention that immunity is available only when individuals are screened for admission to one of the five state-owned mental health institutes. T.C.A. § 33-2-601 refers to the admission to and discharge from "state-supported mental health institutes." We do not read "state-supported" so narrowly as to suggest that it means only "state-owned." However, even if the plaintiff's interpretation is correct, it is immaterial in this case. In an affidavit, Kirk stated that had he determined Mr. Shelburne was in need of hospitalization, he could have admitted him to one of three facilities, including Lakeshore Mental Health Institute and Central State Mental Health Institute, both of which are state-owned facilities. Accordingly, we find no merit in this argument.

The plaintiff argues that T.C.A. § 33-2-601 contemplates evaluations of "free" persons in the community and that because Mr. Shelburne was in the county jail, his evaluation somehow does not fall under this provision. We find absolutely no support for this argument in the language of T.C.A. § 33-2-601. We will not consider it further.

Next, the plaintiff asserts that Kirk does not enjoy immunity because he did not have a "professional/client relationship" with Mr. Shelburne within the meaning of T.C.A. § 9-8-307(a)(1)(D). We do not find this provision to be relevant to the question of immunity in the instant case. T.C.A. § 9-8-307(a)(1) addresses the jurisdiction of the Tennessee Claims Commission and defines the types of claims that may be brought against the State for the acts or omissions of state employees; but that section does not override the operation of subsection (h), which provides that state employees are absolutely immune for conduct within the scope of their employment. Thus, regardless of whether subsection (a)(1)(D) is satisfied, Kirk still enjoys absolute immunity from suit. The plaintiff's argument is without merit.

The plaintiff further argues that there is no documentary evidence to indicate that the purpose of Kirk's evaluation of Mr. Shelburne was to make a commitment determination. Even if this assertion were true, we do not find it material. Kirk's affidavit establishes that he made a determination that commitment was not appropriate. The plaintiff has not demonstrated any facts to contradict this proof. While Dr. Schacht opines that Kirk's documentation of his evaluation was "generic" and not in keeping with professional standards, these allegations go only to the adequacy of his documentation; they do not create a dispute as to whether Kirk in fact made a commitment determination. This issue is found adversely to the plaintiff.

D.

Having determined that Kirk is entitled to immunity for his evaluation of Mr. Shelburne, we must now determine whether, as a matter of law, Kirk's immunity also shields Frontier Health from a suit predicated on vicarious liability.

It has long been the law in this State that "if an injured person is barred by law from suing the servant he is likewise barred from maintaining a suit against the master when liability is predicated solely on the doctrine of *respondeat superior*." *Stewart v. Craig,* 208 Tenn. 212, 217, 344 S.W.2d 761, 763 (1961); *Carr by Carr v. Carr,* 726 S.W.2d 932, 933 (Tenn. Ct. App. 1986); *Willis v. Guyton,* C/A No. 02A01-9311-CV-00247, 1995 WL 328714, at *2 (Tenn. Ct. App. W.S., filed June 2, 1995). Thus, because Kirk is immune from suit by virtue of his status as a "state employee" pursuant to T.C.A. § 9-8-307(h), Frontier Health cannot, as a matter of law, be held liable for his negligent acts under the theory of *respondeat superior*.

The plaintiff argues that even if Kirk is immune, Frontier Health may nevertheless be liable under the recent decision of the Western Section of this Court in *Johnson v. LeBonheur Children's Medical Center,* C/A No. W1999-01719-COA-RM-CV, 2000 WL 705300 (Tenn. Ct. App. W.S., filed May 25, 2000), *perm. app. granted* December 4, 2000. With all due respect to our colleagues

in the Western Section, we do not agree with the decision reached in the ***Johnson*** case. Under the Rules of the Supreme Court, that unpublished decision is not controlling. *See* Tenn. Sup. Ct. R. 4(H). We also note that the Supreme Court has granted permission to appeal in ***Johnson***. We believe that the instant case is governed by the principles set forth in ***Stewart*** and its progeny.

## IV.

Finally, the plaintiff argues that the defendant's third motion for summary judgment was an improper "lateral appeal" of the denial of its second summary judgment motion to another trial judge within the same circuit. Frontier Health's second summary judgment motion was denied by Judge Jean A. Stanley; its third summary judgment motion was granted by Judge Thomas J. Seeley, Jr.

We do not agree with the plaintiff that the trial court's consideration of the defendant's third motion for summary judgment was improper. The order denying Frontier Health's second summary judgment motion was not a final judgment. A trial court has "the privilege of reversing itself up to and including the date of entry of a final judgment." ***Guess v. Maury,*** 726 S.W.2d 906, 922 (Tenn. Ct. App. 1986); *see also* ***Waste Management, Inc. v. South Central Bell Tel. Co.,*** 15 S.W.3d 425, 429 (Tenn. Ct. App. 1997) ("as long as its judgment has not become final, the trial court may change its mind after reconsidering the proof and the applicable law"). In considering the third motion, Judge Seeley was not bound by any prior determinations made by him or by another judge acting in the same case; he was free to reconsider the proof and the applicable law and render a judgment accordingly. This issue is also found adversely to the plaintiff.

## V.

The judgment of the trial court is affirmed. This case is remanded for collection of costs assessed below, pursuant to applicable law. Costs on appeal are taxed to the appellant, Shirley A. Shelburne, individually and as next friend of Travis Lee Shelburne.

_____
CHARLES D. SUSANO, JR., JUDGE